UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
MERCHDIRECT LLC,

                        Plaintiff,                       **MEMORANDUM AND ORDER**

    - against -                                     17-CV-4860 (RRM) (ARL)

CLOUD WARMER, INC., NICHOLAS
MANGO, and THOMAS MANGO,

                        Defendants.
------------------------------------------------------------------x
ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff MerchDirect LLC ("MerchDirect") brings this action against Cloud Warmer, Inc. ("Cloud Warmer"), and its owners, brothers Nicholas and Thomas Mango ("the Mangos"), alleging, among other things, that defendants violated copyright law and breached a contract which allegedly required Cloud Warmer to create an exclusive and proprietary e-commerce platform for MerchDirect. Cloud Warmer has filed a counterclaim alleging that it was MerchDirect who breached the contract and violated its copyright in the software underlying the platform. Now before the Court are two motions pursuant to Fed. R. Civ. P. 12(b)(6): the Mangos' motion to dismiss the four causes of action alleged against them in the First Amended Complaint ("FAC") and MerchDirect's motion to dismiss the copyright infringement counterclaim. (Docs. No. 43, 64.) For the reasons set forth below, the Mangos' motion is granted in part and denied in part and MerchDirect's motion is granted in its entirety.

## BACKGROUND

      Unless otherwise stated, the following facts are drawn from MerchDirect's FAC (Doc. No. 47), the allegations of which are assumed to be true solely for purposes of analyzing the Mangos' motion to dismiss. Defendant Cloud Warmer is a software company, owned and

operated by the Mangos. (FAC at ¶ 9.) Cloud Warmer builds, deploys, and manages "custom enterprise platforms with a specialization in commerce and business" – *i.e.*, computer software that its customers, who are usually affiliated with the music industry, use to sell products to consumers. (*Id.* at ¶ 10.) Cloud Warmer also offers "e-commerce shopping cart software" under the names "Limited Run" and "Card Included," which enable independent labels and artists to sell merchandise directly to fans. (*Id.* at ¶ 11.)

MerchDirect designs, produces, markets, and distributes merchandise for well-known artists and entertainment brands. (*Id.* at ¶ 5.) Sometime prior to June 19, 2013, MerchDirect entered into negotiations with Cloud Warmer for the creation of a new e-commerce platform. The negotiations were conducted primarily or exclusively in person, with the Mangos representing Cloud Warmer, and Lee Tepper and Justin Beck – the CEO and President, respectively, of MerchDirect – representing MerchDirect. (*Id.* at ¶ 14.) MerchDirect alleges that, during those negotiations, the Mangos each represented that Cloud Warmer "could and would create and develop" a platform with the "e-commerce functionality and features" that MerchDirect sought. (*Id.*) According to the FAC, the Mangos also represented to MerchDirect that "such features would be exclusive to and proprietary to [MerchDirect]." (*Id.*)

These negotiations resulted in a contract between MerchDirect and Cloud Warmer dated June 19, 2013 (the "Agreement"). Under that Agreement, MerchDirect agreed to pay Cloud Warmer "to co-develop and write mutually agreed upon proprietary software features" for MerchDirect's new e-commerce platform, and to provide additional related services to MerchDirect for the three-year term of the Agreement. (*Id.* at ¶ 12.) Upon termination of the Agreement, Cloud Warmer was obligated to give MerchDirect the software codebase for the e-commerce platform (the "Code") and to transfer its copyright interests and rights in the Code to

MerchDirect. (*Id.* at ¶ 18.) Pursuant to these terms, Cloud Direct had no right to use or copy the Code after June 19, 2016, when the Agreement expired. (*Id.* at ¶¶ 18, 22.) In addition, the Agreement contained a non-compete provision, restricting Cloud Warmer from creating "a service that included the creation, production, and distribution of physical merchandise" during the term of the Agreement and for a period of three years thereafter. (*Id.* at ¶ 19.)

Cloud Warmer created the new e-commerce platform, which launched in January 2014. (*Id.* at ¶ 19). However, according to MerchDirect, 97% of the Code for MerchDirect's "new" platform had already been written by defendants before the negotiations with MerchDirect even began. (*Id.* at ¶ 16). Indeed, that old software was used in the "Limited Run" product, which existed at the time of the negotiations. (*Id.*).

While Cloud Warmer provided MerchDirect with a copy of the Code at the expiration of the Agreement, Cloud Warmer continued to use the Code thereafter. (*Id.* at ¶ 23.) Specifically, Cloud Warmer used the Code to create its own "Fulfillment Dashboard Service" (or "FDS"), which performs the same functions as MerchDirect's e-commerce platform and allows FDS customers to compete with MerchDirect. (*Id.* at ¶ 24.) MerchDirect alleges, on information and belief, that one of Cloud Warmer's customers is already using FDS to attract MerchDirect's clients. (*Id.* at ¶ 26.)

Professing to be the owners of the copyright in the Code, MerchDirect registered it with the United States Copyright Office. (*Id.* at ¶ 19.) After that Office issued MerchDirect a Certificate of Registration, effective July 27, 2017, (*id.* & Ex. A to FAC), MerchDirect commenced this action.

The Procedural History and the FAC

The original complaint, filed on August 18, 2017, named only Cloud Warmer as a defendant and contained only three causes of action: a federal claim alleging violations of the Copyright Act, 17 U.S.C. § 101 *et seq.*, and state-law claims for breach of contract and tortious interference with prospective business relations. After Cloud Warmer moved to dismiss this complaint, but before that motion was decided, MerchDirect requested permission to amend the complaint. MerchDirect's motion was granted and, on September 24, 2018, MerchDirect filed the FAC.

The FAC added two new defendants – the Mangos – and five new causes of action. One of the five, a state-law claim for a breach of the implied covenant of good faith and fair dealing, was alleged against Cloud Warmer alone. The other four new causes of action were alleged against all three defendants. All four of these causes of action – the only claims alleged against the Mangos – are the subject of the Mangos' motion to dismiss.

The first of the four causes of action alleges contributory copyright infringement. MerchDirect alleges, on information and belief, that the Mangos, in their capacity as owners and/or agents of Cloud Warmer, caused Cloud Warmer to use the Code in its FDS and to provide copies of the Code to FDS customers. (FAC at ¶ 38.) MerchDirect alleges that through these actions, the Mangos "substantially and materially contributed to the infringement of plaintiff's copyright in the Code by Cloud Warmer and/or its customers." (*Id.* at ¶ 39.)

The second and third of the four causes of action allege fraudulent inducement and fraudulent concealment. Alluding to allegations that the Mangos represented that the Code could and would be created and co-developed exclusively for MerchDirect, the fraudulent inducement cause of action alleges that all three defendants, with an intent to mislead and defraud

4

MerchDirect, made material, false representations to induce MerchDirect to pay "significant monetary sums for the creation and co-development of exclusive and proprietary software … that defendants … had already created." (*Id.* at ¶ 59.) The fraudulent concealment claim alleges that defendants had a duty to disclose to MerchDirect that they had already created the Code which defendants professed to be creating and co-developing exclusively for MerchDirect, but intentionally and fraudulently concealed this information from MerchDirect. (*Id.* at ¶¶ 63–64.)

The last of the four causes of action alleges unjust enrichment. This claim alleges that all three defendants were unjustly enriched by their retention of amounts paid to Cloud Warmer for the creation and co-development of new proprietary software that had already been largely created. (*Id.* at ¶ 71.)

<u>Cloud Warmer's Amended Answer and Counterclaims</u>

In its Amended Answer (Doc. No. 53), Cloud Warmer denies most of the allegations in the FAC. Cloud Warmer admits that it entered into an agreement with MerchDirect, and that this contract contained "language similar to that recited" in the FAC. (Am. Answer at ¶¶ 19–20.) However, Cloud Warmer contends that it is the owner of all rights in the Code, and that it merely "provided a copy of the Code to plaintiff." (*Id.* at ¶¶ 18, 23.)

The Amended Answer also contains counterclaims by Cloud Warmer against MerchDirect. (Doc. No. 53 at 8–18.) The counterclaims include Cloud Warmer's version of events, the details of which need not be discussed for purposes of this memorandum and order. However, in a nutshell, Cloud Warmer alleges that MerchDirect was using a customized version of Cloud Warmer's "Genesis" software – a program designed to enable the user to personalize their websites by turning certain features on or off. (Counterclaims at ¶¶ 13, 18, 20.) Cloud Warmer denies that it ever agreed to provide any feature or product exclusively to MerchDirect.

(*Id.* at ¶ 21.) Indeed, it implies that Cloud Warmer licensed MerchDirect to continue using the customized Genesis software on its own servers, stating that Cloud Warmer "agreed that MerchDirect could run the software on MerchDirect servers" in exchange for "substantial payments." (*Id.* at ¶ ¶ 18, 23.)

Although the counterclaim alleges three causes of action – two alleging breach of contract and one alleging copyright infringement – only the copyright infringement counterclaim is at issue here. In that cause of action, Cloud Warmer admits that "MerchDirect has filed a copyright application with the Copyright Office," but claims that "the application was fraudulent because MerchDirect had no rights, and presently has no rights to the software because it did not seek an assignment of the software, did not write any of the code in the software and did not contribute to the authorship of the code." (*Id.* at ¶ 49.) Cloud Warmer asserts that it, not MerchDirect, is "the beneficial owner of the resulting copyright registration," and that MerchDirect infringed its copyright by using the Code without paying a reasonable royalty. (*Id.* at ¶¶ 50–51.)

<u>The Mangos' Motion to Dismiss</u>

The Mangos now move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the amended complaint fails to state a plausible cause of action against them. (Memorandum of Law in Support of Mangos' Motion to Dismiss ("Mangos' Memo") at 1.) First, they argue that the cause of action for contributory copyright infringement – Count II in the FAC – should be dismissed because the FAC does not allege any acts committed by the Mangos in their personal capacity. (Mangos' Memo at 3.) They argue that their actions in signing the contract on behalf of Cloud Warmer, and the managerial action they took on behalf of that

corporation, cannot give rise to their own personal liability, as MerchDirect has not alleged any basis for piercing the corporate veil. (*Id.*)

Second, the Mangos argue that the allegations of the FAC do not plausibly support a claim for fraudulent inducement or fraudulent concealment – Counts V and VI in the FAC. The Mangos argue, among other things, that the allegations relating to their misrepresentations are conclusory and insufficient to support these claims. They further argue that when they made representations regarding the services Cloud Warmer would provide to MerchDirect, they were acting in their capacity as corporate employees.[1]

Third, with respect to the unjust enrichment claim contained in Count VII of the FAC, the Mangos argue that since the Agreement provided that MerchDirect would pay Cloud Warmer and not the Mangos, Cloud Warmer alone reaped the benefits of their activity and the corporation alone should have to compensate MerchDirect for any unjust enrichment. (Mangos' Memo at 6.) Citing to *Compunnel Software Grp., Inc. v. Spectrasoft Techs., Inc.*, 21 Misc. 3d 1129(A), 873 N.Y.S.2d 510 (Civ. Ct. 2008) (table) – a New York case which applied New Jersey law – the Mangos argue that MerchDirect cannot expect remuneration from the Mangos because they were not parties to the Agreement. (Mangos' Memo at 6.)

MerchDirect's Motion to Dismiss

MerchDirect moves to dismiss Cloud Warmer's copyright infringement counterclaim pursuant to Federal Rule Civil Procedure 12(b)(6) for failure to state a claim on which relief may be granted. MerchDirect principally alleges that Cloud Warmer cannot sue for copyright infringement because it does not possess a valid copyright registration. (Memorandum of Points

---

[1] The Mangos also advance two arguments which are not cognizable on a motion to dismiss: that MerchDirect has no evidence of the alleged misrepresentations and that it should have been apparent from Cloud Warmer's website that "earlier versions of virtually the same product had virtually the same capabilities." (Mangos' Memo at 5.)

and Authorities in Support of Plaintiff's Motion to Dismiss Cloud Warmer's Counterclaim for Copyright Infringement ("MerchDirect's Memo") (Doc. No. 64-1) at 4.)  MerchDirect also argues that the copyright infringement claim is implausible because the Agreement expressly provides that MerchDirect would be given the Code at no cost should it terminate the Agreement, yet desire to continue using the Code.  (*Id.* at 4–5.)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to examine the legal, rather than factual, sufficiency of a complaint.  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).  Generally, under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  For claims premised on fraud, pleadings are also subject to the heightened standard of Rule 9(b), under which a plaintiff must state with particularity the circumstances constituting the alleged fraud.

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Rather, a plaintiff's complaint must include "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (*citing Twombly*, 550 U.S. at 570).

## DISCUSSION

I. <u>The Mango's Motion to Dismiss</u>

A. <u>Contributory Copyright Infringement</u>

"A contributory infringer is 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 99–100 (2d Cir. 2016) (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971)). "To recover under this theory, 'a plaintiff must first establish direct infringement by the relevant third party.'" *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015) (quoting *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 423 (S.D.N.Y. 2011)). "After that is established, a defendant may be held liable for contributory copyright infringement if, with knowledge of the infringing activity, it materially contributes to the infringing conduct of [the third party]." *Id.* (internal quotation marks and citation omitted).

In this case, MerchDirect has adequately alleged infringement by Cloud Warmer. "To state a claim for copyright infringement, a plaintiff must allege that the plaintiff owned a valid copyright and the defendant 'violat[ed] one of the exclusive rights that 17 U.S.C. § 106 bestows upon [a] copyright holder.'" *Great Minds v. Fedex Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018) (quoting *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163, 166 (2d Cir. 2016)). MerchDirect has done so, alleging that it has owned the copyright in the Code since the

termination of the Agreement in June 2016 and that Cloud Warmer violated its exclusive rights in the Code by using the Code thereafter. In addition, the FAC adequately alleges contributory copyright infringement by the Mangos, alleging that they materially contributed to the infringing conduct because they, as owners and/or agents of Cloud Warmer, caused the corporation to use a copy of the Code despite knowing that, under the terms of the Agreement they had personally negotiated, the exclusive rights in the Code had passed to MerchDirect.

In arguing that MerchDirect's contributory copyright infringement claims against them should be dismissed, the Mangos argue that they, as corporate officers, cannot be held personally liable for Cloud Warmer's alleged infringement. This is simply incorrect. "It is well-established that corporate officers *can* be held liable for the infringing acts of their corporations if they personally participated in the acts constituting infringement." *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03-CV-5664 (JGK), 2005 WL 612814, at *6 (S.D.N.Y. Mar. 14, 2005) (emphasis added). In *EMI Christian Music Grp., Inc.*, for example, the Second Circuit upheld a jury verdict finding the founder of a corporation was liable for contributory copyright infringement based on evidence that he personally encouraged corporate executives and customers to engage in infringing activity. 844 F.3d at 100. Here, too, Cloud Warmer's founders are alleged to have personally caused their corporation to engage in the infringing conduct. Accordingly, the Mangos' motion to dismiss the contributory copyright infringement claim against them is denied.

B. <u>Fraudulent Inducement</u>

"To state a claim for fraudulent inducement under New York law, a plaintiff must allege: 'a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and

10

which causes injury.'" *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 490 (S.D.N.Y. 2017) (quoting *Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001)); *see also Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 250 N.E.2d 214, 216 (N.Y. 1969). "A claim for fraudulent inducement must satisfy the heightened pleading requirement of Federal Rule of Civil Procedure 9(b), which requires that a party 'state with particularity the circumstances constituting fraud.'" *Id.* (quoting Fed. R. Civ. P. 9(b)). To comply with Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). In addition, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), a fraud claim must be supported by allegations "that give rise to a strong inference of fraudulent intent." *S.Q.K.F.C., Inc. v. Bell Atl. Tricon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).

As a general matter, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). "Under New York law, false statements indicating an intent to perform under a contract are insufficient to support a claim of fraud." *PetEdge*, 234 F. Supp. 3d at 491 (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996)). Thus, a plaintiff "may not rely on defendants' purported misrepresentations of future intent to perform; plaintiff must identify misrepresentations of presently existing facts made to induce plaintiff to enter the … Agreement." *Ningbo Prod. Imp. & Exp. Co. v. Eliau*, No. 11-CV-650

(PKC), 2011 WL 5142756, at *7 (S.D.N.Y. Oct. 31, 2011) (citing *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994)).

In this case, the FAC alleges two statements by the Mangos with the particularity required by Rule 9(b). First, the FAC alleges that, during the face-to-face negotiations, both brothers represented that Cloud Warmer "could and would create and develop" a platform with the "e-commerce functionality and features" that MerchDirect sought. (FAC at ¶ 14.) However, the FAC does not allege that this representation was false. To the contrary, the FAC implies that Cloud Warmer did, in fact, build such a platform. The work was apparently satisfactory, for MerchDirect not only opted to retain the Code, but is now suing to protect its copyright interests in the Code.

The second alleged misrepresentation – that "such features would be exclusive to and proprietary to [MerchDirect]," (FAC at ¶ 14) – is one of promises contained in the Agreement. A fraud claim based on this misrepresentation would be premised upon an alleged breach of this contractual duty, which cannot serve as the basis for a fraudulent inducement claim. *See PetEdge*, 234 F. Supp. 3d at 491; *Ningbo Prod. Imp. & Exp. Co.*, 2011 WL 5142756, at *7. Moreover, the FAC does not contain allegations "that give rise to a strong inference of fraudulent intent." *S.Q.K.F.C., Inc.*, 84 F.3d at 634. Accordingly, the fraudulent inducement claim is dismissed as to the Mangos.

C. <u>Fraudulent Concealment</u>

A fraudulent concealment claim has the same elements as a fraudulent inducement claim with one additional requirement: "that a plaintiff … show that the defendant had a duty to disclose the material information." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 119 (E.D.N.Y. 2011) (citing *Manhattan Motorcars, Inc. v. Automobili Lamborghini, S.p.A.*, 244 F.R.D. 204,

213 (S.D.N.Y. 2007)); *see Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995) ("To establish fraudulent concealment, a plaintiff must also prove that the defendant had a duty to disclose the material information."). As discussed above, MerchDirect has not adequately alleged fraudulent inducement. Even if it had, the FAC does not allege facts to support MerchDirect's conclusory allegation that the Mangos had a duty to disclose to MerchDirect that they had already created the Code. (*See* FAC at ¶ 64.) Indeed, the FAC itself alleges that they had *not* created it yet, even though 97% of the software which they ultimately used was also used in other products. Accordingly, the fraudulent concealment claim is also dismissed as to the Mangos.

D. Unjust Enrichment

"Cases dealing with unjust enrichment in New York are uniform in their recognition of three elements of the claim: 'To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quoting *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000)). "It is well established that unjust enrichment does not require proof of any wrongdoing by the enriched party." *Marks v. Energy Materials Corp.*, No. 14-CV-8965 (GHW), 2015 WL 3616973, at *6 (S.D.N.Y. June 9, 2015) (quoting *United States v. Nagelberg*, 772 F. Supp. 120, 122 (E.D.N.Y. 1991)). To state such a claim, however, a plaintiff must allege that that the defendant "obtained some unfair benefit." *Int'l Leisure Prod., Inc. v. FUNBOY LLC*, 747 F. App'x 23, 26 (2d Cir. 2018) (summary order); *see Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) ("The basis of a claim for unjust enrichment is that the

defendant has obtained a benefit which in 'equity and good conscience' should be paid to the plaintiff.") (citation omitted).

In this case, MerchDirect alleges that it paid Cloud Warmer – a corporation owned and operated by the Mangos – a substantial sum to co-develop and create a custom-built e-commerce platform which would be the exclusive property of MerchDirect. Instead, MerchDirect alleges, it received a customized version of a software product that Cloud Warmer was making available to other customers. MerchDirect asserts that, even if Cloud Warmer's actions did not breach their Agreement, it would be inequitable to permit defendants to reap an unwarranted benefit for their wrongful actions.

These allegations arguably state a claim for unjust enrichment, and the Mangos do not expressly argue to the contrary. Rather, the Mangos argue that they cannot be liable under an unjust enrichment theory because only Cloud Warmer was a signatory to the contract. In support of this argument, the Mangos rely solely on *Compunnel Software Grp., Inc. v. Spectrasoft Techs., Inc.*, 21 Misc. 3d 1129(A), 873 N.Y.S.2d 510 (N.Y. Civ. Ct. 2008) (table) – a case which is readily distinguishable on the law and on the facts. First, although it was decided by the Civil Court of the City of New York, the case applied New Jersey law in deciding the unjust enrichment claim. Second, the plaintiff in that case was seeking remuneration from a corporate officer from whom he had no right to expect remuneration. In this case, by contrast, the remuneration had already been paid by the plaintiff, who is now alleging that it would be inequitable to allow defendants to keep it.

The fact that the money may have been paid to Cloud Warmer, rather than to the Mangos, does not necessarily insulate the Mangos from liability. "New York law … allows courts to disregard the corporate form and impose personal liability to pierce the corporate veil … when

necessary to prevent fraud or to achieve equity.'" *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979) (quoting *Port Chester Elec. v. Atlas*, 40 N.Y.2d 652, 656 (1976)); *see also Int'l Council of Shopping Ctrs., Inc. v. Info Quarter, LLC*, No. 17-CV-5526 (AJN), 2018 WL 4284279, at *4 (S.D.N.Y. Sept. 7, 2018). The corporate veil may be pierced if a plaintiff can show "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Morris v. New York State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160–61 (N.Y. 1993)).

The Court need not determine, for purposes of this motion, whether it would be appropriate to pierce the corporate veil in this case. However, the Court notes that the Mangos are alleged to be "owners" of Cloud Warmer, to have conducted the negotiations personally, and to have been responsible for every aspect of the corporation's activities. In light of these allegations, the Court cannot completely discount the possibility that the Mangos might be individually liable for the unjust enrichment of Cloud Warmer. *See United States v. Nagelberg*, 772 F. Supp. 120, 124 (E.D.N.Y. 1991) (finding the principals of a corporation individually liable where their corporations were unjustly enriched, and it was appropriate to pierce the corporate veil).

II. <u>MerchDirect's Motion to Dismiss the Copyright Infringement Counterclaim</u>

"To prove a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) (citing *Boisson v. Banian, Ltd.*, 273 F.3d 262, 267 (2d Cir. 2001)). "With respect to the first prong, … '[a] certificate of registration from the

15

United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright.'" *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*, 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016) (quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 98 (2d Cir. 1999)). "[T]he owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and [a] fee …." 17 U.S.C. § 408(a).

Registration is permissive; it "is not a condition of copyright protection." *Id.* Registration is, however, "a precondition to filing a copyright infringement claim." *In re Indu Craft, Inc.*, 749 F.3d 107, 113 (2d Cir. 2014) (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010)). Section 411(a) of Title 17 of the United States Code provides, in pertinent part:

> Except for an action brought for a violation of the rights of the author [of a work of visual art] under section 106A(a), and subject to the provisions of subsection (b), no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

Subsection (b) provides, in pertinent part:

> A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless –
>
> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1).

Section 411(a)'s registration requirement is not jurisdictional. *In re Indu Craft, Inc.*, 749 F.3d at 113; *Reed Elsevier*, 559 U.S. at 166. In addition, the Supreme Court has not yet decided "whether § 411(a)'s registration requirement is a mandatory precondition to suit that … district courts may or should enforce *sua sponte* by dismissing copyright infringement claims involving

unregistered works." *Reed Elsevier*, 559 U.S. at 171. However, the Supreme Court has made it clear that a "copyright claimant may commence an infringement suit [only after] … the Copyright Office registers a copyright." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com*, LLC, 139 S. Ct. 881, 886 (2019). According to the Supreme Court, "registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Id.* at 887.

"In limited circumstances, copyright owners may file an infringement suit before undertaking registration." *Id.* at 888. Section 411(a) "expressly allows courts to adjudicate infringement claims involving unregistered works in three circumstances: where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused." *Reed Elsevier*, 559 U.S. at 165. Under § 411(c), a copyright owner may also sue for infringement of a live broadcast before "registration ... has been made," provided the owner "declare[s] an intention to secure copyright in the work" and "makes registration for the work, if required by subsection (a), within three months after [the work's] first transmission." 17 U.S.C. §§ 411(c)(1)-(2). Similarly, under § 408(f)(2), a copyright owner who "is preparing to distribute a work of a type vulnerable to predistribution infringement – notably, a movie or musical composition – … may apply for preregistration." *Fourth Estate Pub. Benefit Corp.*, 139 S. Ct. at 888 (citing 17 U.S.C. § 408(f)(2); 37 CFR § 202.16(b)(1)).

Although Cloud Warmer alleges that it is the author and owner of the Code, Cloud Warmer does not allege that it registered the Code before filing its counterclaim. It also does not argue that any of the limited exceptions to the requirement that a copyright owner register their copyright before filing an infringement action apply in this case. Rather, Cloud Warmer alleges

17

that it is the "beneficial owner of the … copyright registration" because MerchDirect filed a fraudulent copyright registration application. (Counterclaim at ¶¶ 49–50).

Cloud Warmer's Opposition to Plaintiff's Motion to Dismiss, (Doc. No. 67), cites no authority whatsoever in support of this dubious proposition. Nor could it. As noted above, 17 U.S.C. § 411(b)(1) provides that a certificate of registration which contains inaccurate information satisfies the registration requirements of § 411(a) "unless … the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and … the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1). If, as Cloud Warmer alleges, MerchDirect knowingly submitted a fraudulent application for registration, the certificate of registration would not satisfy the registration requirements, and would not support either party's copyright infringement claims. Accordingly, Cloud Warmer's counterclaim is dismissed without prejudice for lack of a copyright registration. *See Film Chest Media Grp., Inc. v. Hyde*, No. 14-CV-0368 (LAK) (AJP), 2014 WL 6791534, at *9 (S.D.N.Y. Oct. 21, 2014) (dismissing a counterclaim for copyright infringement without prejudice for failure to obtain a copyright registration certificate).

## CONCLUSION

For the reasons set forth above, the Mangos' motion to dismiss is granted with respect to the causes of action alleging fraudulent inducement and fraudulent concealment, and denied with respect to the other two causes of action. The fraudulent inducement and fraudulent concealment claims (Counts V and VI of the FAC) are dismissed against the Mangos alone, since Cloud Warmer has neither filed a motion to dismiss of its own nor joined in the Mangos' motion.

18

MerchDirect's motion to dismiss the copyright infringement counterclaim (Count III of Cloud Warmer's counterclaim) is granted and that count is dismissed in its entirety.

This action is re-committed to the assigned magistrate judge for supervision of all remaining pre-trial matters.

SO ORDERED.

Dated: Brooklyn, New York  *Roslynn R. Mauskopf*
       September 30, 2019

_____
ROSLYNN R. MAUSKOPF
United States District Judge